# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PHILADELPHIA INQUIRER<br>801 Market Street, Suite 300<br>Philadelphia, PA 19107,<br><br>  and<br><br>THE PATRIOT-NEWS<br>2020 Technology Parkway, Suite 300<br>Mechanicsburg, PA 17050,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOHN E. WETZEL,<br>IN HIS INDIVIDUAL CAPACITY AS<br>SECRETARY OF THE<br>PENNSYLVANIA DEPARTMENT OF<br>CORRECTIONS,<br>1920 Technology Parkway,<br>Mechanicsburg, PA 17050,<br><br>  and<br><br>MARIROSA LAMAS,<br>IN HER INDIVIDUAL CAPACITY AS<br>SUPERINTENDANT OF THE STATE<br>CORRECTIONAL INSTITUTE AT<br>ROCKVIEW<br>1 Rockview Place<br>Bellefonte, PA 16823,<br><br>  and<br><br>JOHN OR JANE DOE,<br><br>    Defendants. | Civil Action No.<br><br>(Filed Electronically) |

**VERIFIED COMPLAINT**

**PRELIMINARY STATEMENT**

1.      "To determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about the 'initial procedures,' which are invasive, possibly painful and may give rise to serious complications.  This information is best gathered first-hand or from the media, which serves as the public's surrogate." *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002) (citations omitted) (hereinafter *CFAC*); *see also Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012).

2.      Plaintiffs, pursuant to 42 U.S.C. § 1983, seek declaratory relief and preliminary and permanent injunctive relief to prevent defendants from violating the First Amendment of the United States Constitution by enforcing a Department of Corrections policy that prohibits witnesses to executions from viewing and hearing the entirety of the execution "from the moment the condemned enters the execution chamber through, to and including, the time the condemned is declared dead." *CFAC*, 299 F.3d at 886.

3.      Plaintiffs, pursuant to 42 U.S.C. § 1983, also seek declaratory relief and preliminary and permanent injunctive relief to require defendants to

protect the public's First Amendment rights by affording witnesses to executions the opportunity to hear the final statement, if any, a condemned makes before he or she is put to death.

## PARTIES

4.    *The Philadelphia Inquirer* (the "*Inquirer*"), is a daily newspaper with its principal place of business at 801 Market Street, Suite 300, Philadelphia, PA 19107.  The *Inquirer*'s core distribution area spans an eight county area including Philadelphia and its surrounding counties in Pennsylvania and New Jersey.  As of September 16, 2012, the *Inquirer* had a daily circulation of more than 202,000 copies and a Sunday circulation of more than 382,000 copies, as well as 30,000 digital only subscribers.   The *Inquirer*, which has won nineteen Pulitzer Prizes, regularly covers criminal proceedings involving defendants who have been sentenced to death, and an *Inquirer* reporter was among the members of the press selected to witness the last execution in Pennsylvania in 1999.  The *Inquirer* has been covering extensively the criminal proceedings relating to the next execution in Pennsylvania, currently scheduled for October 3, and has, in response to a press release from the Pennsylvania Department of Corrections, submitted the name of the reporter it intends to send to witness the October 3 execution.  The *Inquirer* also intends to send reporters to witness and report on

future executions in Pennsylvania.  Witnessing the entirety of an execution — from start to finish — is crucial to the *Inquirer*'s ability to accurately report on and provide its readers with a full and complete description of the lethal injection process as carried out in Pennsylvania.

5.    *The Patriot-News* is a daily newspaper with its principal place of business at 2020 Technology Parkway, Suite 300, Mechanicsburg, PA 17050. *The Patriot-News* is distributed in Harrisburg and a six county area in central Pennsylvania.  As of September 24, 2012, *The Patriot-News* had a daily circulation of more than 68,000 copies and a Sunday circulation of more than 117,000 copies. *The Patriot-News*, which recently won a Pulitzer Prize for its coverage of the Jerry Sandusky case, regularly covers criminal proceedings involving defendants who have been sentenced to death.  *The Patriot-News* has been covering extensively the criminal proceedings relating to the next execution in Pennsylvania, currently scheduled for October 3, and has, in response to a press release from the Pennsylvania Department of Corrections, submitted the name of the reporter it intends to send to witness the October 3 execution.  *The Patriot-News* also intends to send reporters to witness and report on future executions in Pennsylvania. Witnessing the entirety of an execution – from start to finish – is crucial to the *The Patriot-News'* ability to accurately report on and provide its readers with a full and complete description of the lethal injection process as carried out in Pennsylvania.

4

6. Defendant John E. Wetzel is the Secretary of the Pennsylvania Department of Corrections (the "DOC"). Acting under color of state law, he is responsible for the overall management and operation of the correction system in Pennsylvania, and personally approved the DOC protocols at issue in this case. Plaintiff sues Mr. Wetzel in his individual capacity as Secretary of the DOC.

7. Defendant Marirosa Lamas is the Superintendant of the State Correctional Institute at Rockview ("SCI Rockview"), the facility at which executions in Pennsylvania take place. Superintendant Lamas, acting under color of state law, supervises executions in Pennsylvania. *See* 61 Pa. C.S. § 4304(a)(2) ("The execution shall be supervised by the chief administrator or his designee of the State correctional institution designated by the department for the execution."). Plaintiff sues Ms. Lamas in her individual capacity as Superintendant of SCI Rockview.

8. Defendant John or Jane Doe is the person, if anyone, that Superintendent Lamas has designated to supervise executions and/or carry out the DOC's execution protocols.

### JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), and may grant declaratory and injunctive relief pursuant

to 28 U.S.C. § 2201(a), § 2202 and Federal Rule of Civil Procedure 65.  Plaintiffs'

claims arise under the First and Fourteenth Amendments of the United States

Constitution and under 42 U.S.C. § 1983.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §

1391(b)(1) and (b)(2) because defendants reside in this judicial district and because

a substantial part of the events or omissions giving rise to the claim will occur,

absent judicial relief, in this district.

## THE RELEVANT FACTS

### WITNESSES TO EXECUTIONS

11.    Pennsylvania's execution chamber is located at SCI Rockview.

12.    As pictured below, an observation room, which contains a

window into the execution chamber, adjoins the chamber.[1]

---

[1]    Source of photo: http://www.wgal.com/image/view/-/6977772/medRes/2/-/maxh/358/maxw/538/-/8cyw91z/-/death-0008---19344381.jpg



13.    A retractable curtain hangs from the window separating the observation room from the chamber, as pictured below.[2]



---

[2]    Source of photo: http://www.portal.state.pa.us/portal/server.pt/document/ 1284942/rockview_6_24_08_7_jpg

14.     Pennsylvania law requires the presence of witnesses at executions.

15.     Specifically, 61 Pa. C.S. § 4305(a) provides that: "No person except the following shall witness any execution under the provisions of this chapter: (1) The chief administrator or his designee of the State correctional institution where the execution takes place. (2) Six reputable adult citizens selected by the secretary.  (3) One spiritual adviser, when requested and selected by the inmate. (4) Not more than six duly accredited representatives of the news media. (5) Such staff of the department as may be selected by the secretary. (6) Not more than four victims registered with and selected by the victim advocate."

## THE EXECUTION PROTOCOLS

16.     The DOC's Capital Case Procedure Manual sets forth the protocols for conducting executions in Pennsylvania.  A copy of the Manual, heavily redacted by the DOC, is attached as Exhibit A.

17.     The Manual provides that all of the following actions are to take place with the curtain between the execution chamber and the observation room drawn closed and, therefore, unobserved by the witnesses:

(a)   The inmate is transported into the execution chamber and secured on the injection table. *See* Manual at p. 4-24, ¶ 2(a).

(b)   The inmate is connected to an EEG monitor. *See id.* at ¶ 2(b).

(c)   The lethal injection team inserts an intravenous catheter into each of the inmate's arms. *See id.* at ¶ 2(c).

(d)   The intravenous catheters are connected to an IV extension set and administration set leading to saline solutions. *See id.* at ¶ 2(d).

(e)   The lethal injection team starts and regulates the flow of the saline solutions. *See id.* at ¶ 2(e).

(f)   The lethal injection team applies leads for the electrocardiogram and ensures that it is working. *See id.* at ¶ 2(f).

(g)   The lethal injection team leaves the execution chamber for a separate room from which it will administer the drug cocktail. *See id.* at ¶ 2(g).

9

18.    Only after all of the actions described above have been completed is the curtain covering the window between the execution chamber and the observation room opened.  *See id.* at ¶ 3(b) ("The opening of the curtain is the signal to the LIT [lethal injection team] to commence the lethal injection").[3]

19.    The DOC's protocols prevent the witnesses to an execution from observing:  (a) the demeanor of the condemned as he or she enters the execution chamber and is strapped onto the injection table; (b) the demeanor of the individuals who escort the condemned into the chamber and strap him or her onto the injection table; (c) the demeanor of the members of the lethal injection team as they prepare the condemned; (d) the amount of force, if any, that is required to strap the condemned to the injection table; (e) the length of time required to insert the intravenous catheters; (f) the type and severity of complications, if any, that

---

[3]    The attached version of the Manual is dated April 2010.  After it issued that version, the DOC learned that one of the drugs used in the lethal injection protocol is no longer available and "determined that it is necessary to make revisions to its protocol to permit the use of another drug."  *See* ¶ 3 of the Joint Motion of the Parties for an Enlargement of Time (Document No. 71) in *Chester v. Beard*, No. 08-CV-1261, which currently is pending in this Court before Chief Judge Kane (the "Chester Action").  The DOC issued a revised Manual on August 28, 2012. *See* Status Report of the Attorney General (Document No. 81) in the Chester Action.  Plaintiffs do not possess a copy of the revised Manual.  However, because the DOC indicated that the purpose of the revision was to allow for the use of a different drug in the lethal injection process, plaintiffs infer, and therefore allege on information and belief, that the provisions in the April 2010 version relating to the stages of the execution visible to witnesses remain unchanged in the new version.

arise during the catheterization process; (g) the amount of pain, if any, that the condemned exhibits during the preparation process; and (h) the length of time that the condemned is left laying in the execution chamber before the lethal injection is administered.

20.    Indeed, the first time the witnesses see the condemned, he or she is already in the execution chamber, immobilized on the injection table — the witnesses see none of the processes leading up to that point.

21.    After the curtain is opened, the lethal injection team administers the lethal injection drug cocktail.  *See* Manual at p. 4-24 to 4-25, ¶ 3(c).

22.    Once asystole or the absence of electrical activity is observed ("flat-lining" in common parlance) for a set number of minutes, the curtain is closed.  *See id.* at p. 4-25 to 4-26, ¶¶ 3(c)(11), 3(c)(12), 4(c) and 4(d).

23.    With the curtain closed, the Coroner then enters the execution chamber, examines the condemned to verify that he or she is dead and, if so, pronounces the condemned dead.  *See id.* at p. 4-26, ¶ 4(e) and (f).

24.    Once the Coroner leaves the execution chamber, the curtain is drawn open and an announcement is made to the witnesses over a public address

system that the Coroner has pronounced the condemned dead. *See id.* at p. 4-26 to 4-27, ¶ 4(c).

25.    The curtain is then closed again, and the witnesses are escorted out of the facility. *See id.* at p. 4-26 to 4-27, ¶ 5(c) and (d).

26.    In addition, there is no indication in the unredacted sections of the Manual that any part of the execution process — either before or after the opening of the curtain — is audible to the witnesses.

27.    As such, the DOC's protocols also appear to prevent the witnesses to an execution from hearing:  (a) whether or not the condemned expressed any pain at any point in the process; (b) any conversations between and among the condemned and/or the lethal injection team indicating the existence or nonexistence of complications; and (c) any efforts by the guards and/or the lethal injection team to either comfort or taunt the condemned.

28.    The protocols described above are the same, in all relevant respects, as the protocols that the State of California employed until 2002, when the Ninth Circuit Court of Appeals held that they violated the First Amendment rights of the public to witness executions "from the moment the condemned enters

12

the execution chamber through, to and including, the time the condemned is declared dead." *CFAC*, 299 F.3d at 886.[4]

29.     The protocols described above also are the same, in all relevant respects, as the protocols that the State of Idaho employed until this past summer, when the Ninth Circuit Court of Appeals again held that they violated the public's First Amendment right "to witness all phases of [a condemned's] execution." *Associated Press v. Otter*, 682 F.3d 821, 824 (9th Cir. 2012).

30.     In addition, the DOC's protocols do not provide the condemned the opportunity, should he or she wish to exercise it, to make a final statement while visible to the witnesses.[5]

31.     As such, the protocols do not protect the public's First Amendment right to hear the final statement, if any, the condemned makes before he or she is put to death.

---

[4]     The Ninth Circuit issued the *CFAC* decision three years after the last execution in Pennsylvania in 1999.

[5]     It is theoretically possible that the redacted portions of the Manual provide the condemned the opportunity to make a statement earlier in the process but, if that is the case, the witnesses would have no way of verifying that the condemned made the statement, and the statement would not actually be the condemned's last words.

32.    Specifically, the public is denied the right to hear a final statement by the condemned that could indicate, among other possibilities:  (a) the level of remorse, if any, expressed by the condemned; (b) whether the condemned professes innocence or admits guilt; (c) whether the condemned seeks forgiveness from society or divinity; (d) whether the pre-execution protocols caused the condemned any physical pain; (e) the amount of mental anguish, if any, expressed by the condemned; and (f) whether the condemned seeks to deter others from conduct that could land them in the same position as the condemned.

### THE IMPORTANCE OF PUBLIC ACCESS TO EXECUTIONS

33.    "Independent public scrutiny — made possible by the public and media witnesses to an execution — plays a significant role in the proper functioning of capital punishment." *CFAC*, 299 F.3d at 876.

34.    "An informed public debate is critical to determining whether execution by lethal injection comports with 'the evolving standards of decency which mark the progress of a maturing society.'" *Id*. (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

35.    In addition, "public access [to criminal proceedings] fosters an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

36.    "[P]ublic observation of executions fosters the same sense of catharsis that public observation of criminal trials fosters.  Although this may reflect the dark side of human nature, the Supreme Court has recognized that the public must be permitted to see justice done, lest it vent its frustration in extralegal ways."  *CFAC*, 299 F.3d at 877 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980)).

37.    The DOC's execution protocols deprive the public of the information necessary to engage in an informed debate about the most severe penalty the government can impose on its citizens.

## COUNT I
## 42 U.S.C. § 1983

38.    Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 37 of this Complaint as if fully set forth.

39.    The First Amendment, made applicable to the states by the Fourteenth Amendment, guarantees designated members of the public and the press a qualified right of access to governmental proceedings, including executions.

40.    The DOC protocols that: (a) hide the initial procedures of an execution from the view of the witnesses selected to observe the execution; and (b)

do not guarantee the witnesses the right to hear any final statement the condemned may wish to give (the "Protocols"), infringe upon that First Amendment right.

41.   The Protocols are not reasonably related to any legitimate penological objectives.

42.   A person who, under color of any statute, ordinance, regulation, custom or usage of any state, deprives citizens of a right secured by the United States Constitution, shall be liable in a suit in equity for redress of those rights under 42 U.S.C. § 1983.

43.   Defendants, acting under color of state law, will deprive plaintiffs and others similarly situated of their First Amendment rights if they are not prevented from implementing the Protocols.

WHEREFORE, plaintiffs respectfully request that this Court order the following relief:[6]

a.      Declare that defendants' practice of preventing witnesses to an execution from viewing and hearing the entire execution process — starting from the earlier of: (i) the moment the condemned enters the execution chamber, or (ii) the moment the condemned is strapped to the injection table and is attached to intravenous lines, and continuing through, to and including, the time the condemned is declared dead — violates the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment;

b.      Declare that defendants' failure to guarantee witnesses to an execution the right to hear any final statement by the condemned violates the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment;

c.      Enter a preliminary and permanent mandatory injunction requiring defendants to conduct all phases of the execution process — starting from the earlier of: (i) the moment the condemned enters the execution chamber, or

---

[6]    To remove any doubt, plaintiffs are *not* suggesting that defendants should be prohibited from implementing procedures that will mask the identities of those who carry out executions while they are visible to witnesses.  Rather, plaintiffs only request that the entirety of executions, including any final statement by the condemned, take place in the view of witnesses.

(ii) the moment the condemned is strapped to the injection table and is attached to intravenous lines, and continuing through, to and including, the time the condemned is declared dead — in the view of and audible to all witnesses to that execution;

      d.    Enter a preliminary and permanent injunction prohibiting defendants from implementing any provisions of the Capital Case Procedure Manual that would prevent witnesses to executions from viewing and hearing all phases of the execution process — starting from the earlier of: (i) the moment the condemned enters the execution chamber, or (ii) the moment the condemned is strapped to the injection table and is attached to intravenous lines, and continuing through, to and including, the time the condemned is declared dead;

      e.    Enter a preliminary and permanent mandatory injunction requiring defendants to afford witnesses to an execution the ability to hear any final statement the condemned may wish to give;

      f.    Enter a preliminary and permanent injunction prohibiting defendants from implementing any provisions of the Capital Case Procedure Manual that would prevent witnesses to executions from hearing any final statement that the condemned may wish to give; and

      g.     Such other relief as the Court deems just and proper.


Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP    AMERICAN CIVIL LIBERTIES FOUNDATION
OF PENNSYLVANIA


/s/ Paul H. Titus
Paul H. Titus (Pa. I.D. No. 1399)          Witold J. Walczak (Pa. I.D. No. 62976)
120 Fifth Avenue, Suite 2700            313 Atwood Street
Pittsburgh, PA 15222-3001              Pittsburg, PA 15213
(412) 577-5200 (tel)                    (412) 681-7864 (tel)
(412) 765-3858 (fax)                    (412) 681-8707 (fax)


Stephen J. Shapiro (Pa. I.D. No. 83961)*    Mary Catherine Roper (Pa. I.D. No.71107)
H. Justin Park  (Pa. I.D. No. 92007)*       P.O. Box 40008
1600 Market Street, Suite 3600          Philadelphia, PA 19106
Philadelphia, PA  19103-7286           (215) 592-1513 (tel)
(215) 751-2000 (tel)                  (215) 592-1343 (fax)
(215) 751-2205 (fax)


* Application seeking special admission
pursuant to LR 83.8.2.1 will be filed.


*Attorneys for plaintiffs.*


Dated:  September 25, 2012

19

## VERIFICATION

I, Gabriel Escobar, Deputy Managing Editor of *The Philadelphia Inquirer*, verify under the laws of the United States of America that the foregoing is true and correct.

Dated: September 25, 2012

## **VERIFICATION**

I, Donald Gilliland, Enterprise Reporter for *The Patriot-News*, verify under the

laws of the United States of America that the foregoing is true and correct.

Dated: September 25, 2012